**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| **NATIONAL HERITAGE** | * | **Case No. 09-10525-SSM** |
| **FOUNDATION, INC.,** | * | Chapter 7 |
| | * | |
| _____Debtor._ | * | |
| **VIRGINIA HERITAGE BANK**, | * | |
| | * | |
| Movant, | * | |
| v. | * | |
| | * | |
| **NATIONAL HERITAGE** | * | |
| **FOUNDATION, INC.,** | * | |
| | * | |
| Respondent. | * | |

<u>**NOTICE OF HEARING ON MOTION FOR RELIEF FROM STAY
AND MOTION FOR RELIEF FROM STAY**</u>

VIRGINIA HERITAGE BANK, by counsel, has filed a motion for relief from the automatic stay with the court.

**<u>Your rights may be affected.</u>  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)**

If you do not wish the court to grant the relief sought in the motion, or if you want the court to consider your views on the motion, then you or your attorney must do the following checked items:

X    **On or within five (15) days after service of this Notice**, file with the court, at the address shown below, a written response explaining your position with the Court.  **Unless a written response is filed and served within this fifteen (15) day period, the Court may deem any opposition waived, treat the Motion as conceded, and issue an order granting the requested relief without further notice or hearing.**  If you mail your response to the court for filing, you must mail it early enough so

JAMES W. REYNOLDS, ESQUIRE, VSB NO. 33226
**Counsel for Virginia Heritage Bank**
**ODIN FELDMAN & PITTLEMAN PC**
**9302 Lee Highway, Suite 1100**
**Fairfax, Virginia 22031**
**Direct:  703-218-2134**
**Fax:    703-218-2160**
**E-Mail:** jim.reynolds@ofplaw.com

the court will **receive** it on or before the expiration of the fifteen (15) day period.   You must **also** mail a copy to the persons listed below.   The address for the court is as follows:

> Clerk of the Court
> United States Bankruptcy Court
> 200 South Washington Street
> Alexandria, Virginia 22314

You must also:

X    Attend the hearing scheduled to be held on **May 20, 2009, at 9:30 a.m.,** at the United States Bankruptcy Court, 200 South Washington Street, Alexandria, Virginia 22314.  **If no timely response has been filed opposing the relief requested, the court may grant the relief without holding a hearing.**

X    A copy of any written response must be mailed to the following persons:

> James W. Reynolds, Esquire
> Counsel for Virginia Heritage Bank
> 9302 Lee Highway, Suite 1100
> Fairfax, VA 22031

> Office of the United States Trustee
> 115 South Union Street, Suite 210
> Alexandria, VA 22314

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.

VIRGINIA HERITAGE BANK
By Counsel

/s/ **James W. Reynolds**
**James W. Reynolds, Esquire, VSB No. 33226**
**Counsel for Virginia Heritage Bank**
**ODIN, FELDMAN & PITTLEMAN, P.C.**
**9302 Lee Highway, Suite 1100**
**Fairfax, Virginia  22031**
**Direct:   703-218-2134**
**Fax:      703-218-2160**
**E-Mail:  jim.reynolds@ofplaw.com**

## <u>MOTION FOR RELIEF FROM STAY</u>

VIRGINIA HERITAGE BANK, by counsel, pursuant to 11 U.S.C. § 362(d), files this motion for relief from stay against National Heritage Foundation, Inc. (the "Debtor") in order to enforce its rights against certain collateral pledged to it and, in support thereof, states as follows:

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

2.      The Debtor filed a voluntary chapter 11 petition on January 24, 2009 (the "Petition Date").  Since that date the Debtor has operated as a debtor-in-possession.

3.      Virginia Heritage Bank (the "Bank") is a secured creditor in this case with a claim, as of the Petition Date, in the amount of $7,530,588.86.

4.      The Bank's claim, in part, is based upon a loan to the Debtor as evidenced by a promissory note (the "First Note"), dated December 27, 2007, in the principal amount of $6,500,000.00.  A copy of the First Note is attached hereto and incorporated herein as Exhibit A-1.  A copy of the Amendment of Note Agreement effective April 30, 2008, is attached hereto as Exhibit A-2.  The First Note became due and owing in full before the Petition Date, and the Debtor is in default under the First Note.

5.      The Bank's claim is also based upon a loan to the Debtor as evidenced by a promissory note (the "Second Note"), dated December 27, 2007, in the principal amount of $1,000,000.00.  A copy of the Second Note is attached hereto and incorporated herein as Exhibit B.  The Debtor is in default under the Second Note.

6.      Pursuant to the Commercial Pledge Agreement, dated December 27, 2007, the First Note and the Second Note are cross-collateralized. A copy of the Commercial Pledge Agreement is attached hereto and incorporated herein as Exhibit C.

7.      The First Note and the Second Note are secured by the Debtor's interest in certain insurance policies and investment property (the "Collateral") pledged by the Debtor and against which the Bank has perfected its security interest. The Collateral is identified on Exhibit D. The assignments evidencing the perfection of the Bank's security interest in the Collateral are attached hereto as Exhibits E-1 through E-15.

8.      The Bank does not have, and has not been offered, adequate protection for its interest in the Collateral. For example the Sterne Agee/McKim Capital account and the Delp/LPL accounts identified on Exhibit D consist of securities, and the values of those accounts fluctuate with the stock market. Based upon the current economic conditions and the impact of such conditions on the stock market, there is a substantial risk that the Sterne Agee/McKim Capital account and the Delp/LPL accounts could suddenly lose significant value.

9.      Based upon the risk that a significant portion of the Collateral is tied to the stock market and potentially subject to a sudden lose of value, the Debtor does not have equity in the Collateral.

10.      The Collateral is not necessary for an effective reorganization of the Debtor. Upon information and belief the Debtor intends to convert a portion of the Collateral to cash and pay the Bank's claim upon the effective date of the plan of reorganization to be filed in this case.

11.     Cause exists for terminating the automatic stay so that the Bank can enforce its rights against the Collateral.

WHEREFORE, Virginia Heritage Bank, by counsel, requests that the Court enter an order:

a.     terminating the automatic stay so that the Bank can enforce its rights under its loan documents with the Debtor to collect the Collateral and apply the Collateral to the payment of its claim,

b.     in the alternative, requiring the Debtor to convert the Stern Agee/McKim Capital account and the Delp/LPL accounts to cash and place such cash in a segregated account for the payment of the Bank's claim, and

c.     for such other relief as this Court deems appropriate.

Respectfully submitted,
**Virginia Heritage Bank**
By counsel

By:     /s/ James W. Reynolds
**James W. Reynolds, Esquire, VSB No. 33226**
**Counsel for Virginia Heritage Bank**
**ODIN FELDMAN & PITTLEMAN PC**
**9302 Lee Highway, Suite 1100**
**Fairfax, Virginia 22031**
**Direct:  703-218-2134**
**Fax:     703-218-2160**
**E-Mail:  Jim.Reynolds@ofplaw.com**

### Certificate of Service

I HEREBY CERTIFY that a true and accurate copy of this Notice of Hearing on Motion for Relief from Stay and Motion for Relief from Stay was mailed, first class postage prepaid, this 1st day of May, 2009, to Alan M. Noskow, Esquire, Patton Boggs, LLP, 8484 Westpark Drive, 9th Floor, McLean, Virginia 22102; Kenneth M. Misken, Esquire, McGuireWoods LLP, 1750 Tysons Boulevard, Suite 1800, McLean, Virginia 22102; and to the parties identified on the attached service list (service list attached only to the original of this Notice filed with the Court), and via Notice of Electronic Filing pursuant to applicable Standing Order to the Office of the U. S. Trustee.

/s/ James W. Reynolds
James W. Reynolds

#1084084v1 jwrpl-motion relief stay 49667/00005

JUAN J. MANCILLAS, MD,
SYLVIA MANCILLAS, CARLO LANDA MANCILLAS
& OMAR LANDA MANCILLAS
C/O ALBERT T GARCIA III
10113 N 10TH STREET SUITE H
MCALLEN, TX 78504

RAY MARCHAN
1265 N EXPRESSWAY
BROWNSVILLE, TX 78520

CESARE & LOUELLEN SIEPI
C/O ROBERT D. JOHNSON, ESQ.
10929 CRABAPPLE ROAD
ROSWELL, GA 30075

IMELDA SERMERSHEIM
5266 LAKE NEWBURGH DRIVE
NEWBURGH, IN 47630

MATTHEW C. ALLEN, JR.
TEDDIE ALLEN
P.O. BOX 769
MEMPHIS, TX 79245

VIRGINIA ANN HOWARTH
C/O DAVID S. HOWARTH
2165 CHALET DRIVE
ROCHESTER HILLS, MI 48309

ORLANDO KEITH OWEN
JOANN H. OWEN
5880 MIDNIGHT PASS RD APT 408
SARASOTA, FL 34242-2103

DAVID F GIANNUZZI
38 FEATHERBED LANE
SOUTH HERO, VT 05486-0489

WILLIAM T. REID
3444 BRIAR CREEK LN
CARMEL, IN 46033

ELEANOR B GREENWAY/POA CARLA
FIGORSKI
4980 STATE ROAD APT #1-613
DREXEL HILL, PA 19026

WILLIAM N. CUNNINGHAM
C/O KATHRYN A. RUMBERGER
P.O. BOX 1151
WOODINVILLE, WA 98072

GARRETT DESKINS
VIRGINIA DESKINS
10126 BENT BRANCH RD
PIKEVILLE, KY 41501

GENEVA SCHOENHEIT
RR 1 BOX 190
GRAYVILLE, IL 62844

MARY SHRIER
24 SW 91ST
OKLAHOMA CITY, OK 73139-8309

MICHAEL ROGERS
BONNIE ROGERS
27756 N LAKEVIEW CIRCLE
WAUCANDA , IL 60084

MARY S. MCNEELY
C/O MICHAEL MCNEELY, GUARDIAN
1527 WEST HIGHWAY, S.H.114
SUITE 500, PMB 326
GRAPEVINE, TX 76051

JEREMIAH BRANDT
PHYLLIS BRANDT
7412 OLD WASHINGTON ROAD
WOODBINE, MD 21791

BILLIE TREAT
2208 W COUNTRY RD
SKIATOOK, OK 74070

ANNE WOODALL
2735 INGLEWOOD DRIVE SW
GAINESVILLE, GA 30504

JUDITH BOWEN
13909 SPRINGMILL ROAD
CARMEL, IN 46032

TRIMARK CORPORATION
6231 LEESBURG PIKE STE 100
FALLS CHURCH VA 22044

#1084699V1  SERVICE LIST 20 LARGEST CREDITORS 4/21/09  49667/00005

## VIRGINIA HERITAGE BANK

### PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $6,500,000.00 | 12-27-2007 | 04-30-2008 | 9011003135 | 441 | | TP | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  National Heritage Foundation, Inc.
6201 Leesburg Pike, Suite 405
Falls Church, VA 22044

**Lender:**  Virginia Heritage Bank
Fairfax
11166 Fairfax Boulevard
Fairfax, VA 22030

---

IMPORTANT NOTICE

THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.

---

**Principal Amount: $6,500,000.00**          **Interest Rate: 6.750%**          **Date of Note: December 27, 2007**

**PROMISE TO PAY.**  National Heritage Foundation, Inc. ("Borrower") promises to pay to Virginia Heritage Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Six Million Five Hundred Thousand & 00/100 Dollars ($6,500,000.00), together with interest at the rate of 6.750% per annum on the unpaid principal balance from December 27, 2007, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.**  Borrower will pay this loan in one principal payment of $6,500,000.00 plus interest on April 30, 2008.  This payment due on April 30, 2008, will be for all principal, accrued interest, and all other applicable fees, costs and charges, if any, not yet paid.  In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning January 27, 2008, with all subsequent interest payments to be due on the same day of each month after that.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs.  The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.**  Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.  Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule.  Rather, early payments will reduce the principal balance due.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  Virginia Heritage Bank, P.O. Box 221046 Chantilly, VA  20153-1046.

**LATE CHARGE.**  If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.**  Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 18.000% per annum.  However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.**  Each of the following shall constitute an event of default ("Event of Default") under this Note:

Payment Default.  Borrower fails to make any payment when due under this Note.

Other Defaults.  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

Default in Favor of Third Parties.  Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

False Statements.  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Insolvency.  The dissolution or termination of Borrower's existence as a going business, or a trustee or receiver is appointed for Borrower or for all or a substantial portion of the assets of Borrower, or Borrower makes a general assignment for the benefit of Borrower's creditors, or Borrower files for bankruptcy, or an involuntary bankruptcy petition is filed against Borrower and such involuntary petition remains undismissed for sixty (60) days.

Creditor or Forfeiture Proceedings.  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan.  This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Insufficient Market Value of Securities.  Failure to satisfy Lender's requirement set forth in the Insufficient Market Value of Securities section of the Pledge Agreement.

Events Affecting Guarantor.  Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.  In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

Change In Ownership.  Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

Adverse Change.  A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

Cure Provisions.  If any default, other than a default in payment or failure to satisfy Lender's requirement in the Insufficient Market Value of Securities section is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default:  (1) cures the default within fifteen (15) days; or  (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.**  Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest, together with all other applicable fees, costs and charges, if any, immediately due and payable, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.**  Subject to any limits under applicable law, upon default, Borrower agrees to pay Lender's attorneys' fees equal to 20.000% of the principal balance due on the loan and all of Lender's other collection expenses, whether or not there is a lawsuit, including without limitation legal expenses for bankruptcy proceedings.

**JURY WAIVER.**  Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**EXHIBIT**

A-1

## PROMISSORY NOTE
### (Continued)

Loan No: 9011003135                                                                                                                                   Page 2

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Virginia.

**CONFESSION OF JUDGMENT.** Upon a default in payment of this Note at maturity, whether by acceleration or otherwise, Borrower hereby irrevocably authorizes and empowers George H. Ragland, Jr. as Borrower's attorney-in-fact to appear in the Fairfax County clerk's office and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

    (A)  a life insurance policy described in an Assignment of Life Insurance Policy dated December 27, 2007.

    (B)  securities or investment property described in a Commercial Pledge Agreement dated December 27, 2007.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Virginia Heritage Bank P.O. Box 221046 Chantilly, VA 20153-1046.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

NATIONAL HERITAGE FOUNDATION, INC.

By: _____ (Seal)
    Janet H. Ridgely, Vice President of National Heritage
    Foundation, Inc.

LASER PRO Lending, Ver. 5.37.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2007. All Rights Reserved. - VA O:\APPS\HARLAND\CFI\LPL\D20.FC TR-403 PR-10

**THIS AMENDMENT OF NOTE AGREEMENT** made effective this 30th day of April 2008, by and between **National Heritage Foundation, Inc.,** (Borrower/Grantor), and **Virginia Heritage Bank**, Beneficiary and Holder of the Note ("Lender").

### WITNESSETH THAT:

**WHEREAS**, on December 27, 2007 Borrower(s) executed a Promissory Note in the Principal amount of $6,500,000.00; and modified and amended by Amendment of Note Agreement dated April 4, 2008;

**WHEREAS**, it is the desire of the parties hereto to modify the said Note as herein agreed.

**THEREFORE**, the parties hereto do hereby modify the Promissory Note as follows:

1. The interest rate is hereby decreased to 6.00% fixed.

2. The maturity date of the Note is hereby extended to December 31, 2008.

3. ALL OTHER TERMS AND CONDITIONS OF SAID NOTE and AMENDMENTS NOT HEREIN ALTERED OR AMENDED, SHALL REMAIN IN FULL FORCE AND EFFECT.

The Borrower and Lender by their execution of this instrument hereby agree to and accept the terms and conditions of this Amendment of Note and further agree to be bound by the terms expressed herein, to the same extent as if said terms contained herein were made a part of the original Note.

WITNESS the following signatures:

Borrower(s)/Grantors:

National Heritage Foundation, Inc.

By: Janet H. Ridgely
    Vice President

State of VA

County of Fairfax

The foregoing instrument was acknowledged before me this 21st day of May _____, 2008 by Janet H. Ridgely, Vice President of National Heritage Foundation, Inc., as her own act and deed.

Notary Public

My commission expires: _____

Notary Registration Number

705.9 526

BETTY A. GILLEN
Notary Public
Commonwealth of Virginia
My Commission Exps. Oct. 31, 2010



**EXHIBIT**

A-2

# VIRGINIA HERITAGE BANK

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,000,000.00 | 12-27-2007 | | 9011003143 | 441 | | TP | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** National Heritage Foundation, Inc.
6201 Leesburg Pike, Suite 405
Falls Church, VA 22044

**Lender:** Virginia Heritage Bank
Fairfax
11166 Fairfax Boulevard
Fairfax, VA 22030

### IMPORTANT NOTICE

THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.

**Principal Amount: $1,000,000.00        Interest Rate: 5.900%        Date of Note: December 27, 2007**

**PROMISE TO PAY.** National Heritage Foundation, Inc. ("Borrower") promises to pay to Virginia Heritage Bank ("Lender"), or order, in lawful money of the United States of America, on demand, the principal amount of One Million & 00/100 Dollars ($1,000,000.00) or so much as may be outstanding, together with interest at the rate of 5.900% per annum on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning January 27, 2008, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Virginia Heritage Bank, P.O. Box 221046 Chantilly, VA 20153-1046.

**LATE CHARGE.** If a regularly scheduled interest payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment. If Lender demands payment of this loan, and Borrower does not pay the loan in full within 10 days after Lender's demand, Borrower also will be charged 5.000% of the sum of the unpaid principal plus accrued unpaid interest.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 18.000% per annum. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, or a trustee or receiver is appointed for Borrower or for all or a substantial portion of the assets of Borrower, or Borrower makes a general assignment for the benefit of Borrower's creditors, or Borrower files for bankruptcy, or an involuntary bankruptcy petition is filed against Borrower and such involuntary petition remains undismissed for sixty (60) days.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest, together with all other applicable fees, costs and charges, if any, immediately due and payable, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Subject to any limits under applicable law, upon default, Borrower agrees to pay Lender's attorneys' fees equal to 20.000% of the principal balance due on the loan and all of Lender's other collection expenses, whether or not there is a lawsuit, including without limitation legal expenses for bankruptcy proceedings.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth

EXHIBIT

B

ALL-STATE LEGAL®

**PROMISSORY NOTE**

| Loan No: 9011003143 | (Continued) | Page 2 |
|---|---|---|

of Virginia.

**CONFESSION OF JUDGMENT.** Upon a default in payment of this Note at maturity, whether by acceleration or otherwise, Borrower hereby irrevocably authorizes and empowers George H. Ragland, Jr. as Borrower's attorney-in-fact to appear in the Fairfax County clerk's office and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

    (A) a life insurance policy described in an Assignment of Life Insurance Policy dated December 27, 2007.

    (B) securities or investment property described in a Commercial Pledge Agreement dated December 27, 2007.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: John Talbott Houk, Jr., President of National Heritage Foundation, Inc.; or Jan Ridgely, Vice President of National Heritage Foundation, Inc. Requests must be made by 3:00 PM on a business day for same day credit. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Virginia Heritage Bank P.O. Box 221046 Chantilly, VA 20153-1046.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

NATIONAL HERITAGE FOUNDATION, INC.

By: _____ (Seal)
    Janet H. Ridgely, Vice President of National Heritage
    Foundation, Inc.

## VIRGINIA HERITAGE BANK

### COMMERCIAL PLEDGE AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $6,500,000.00 | 12-27-2007 | 04-30-2008 | 9011003135 | 441 | | TP | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Grantor:** National Heritage Foundation, Inc.
6201 Leesburg Pike, Suite 405
Falls Church, VA 22044

**Lender:** Virginia Heritage Bank
Fairfax
11166 Fairfax Boulevard
Fairfax, VA 22030

---

THIS COMMERCIAL PLEDGE AGREEMENT dated December 27, 2007, is made and executed between National Heritage Foundation, Inc. ("Grantor") and Virginia Heritage Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means all of Grantor's property (however owned if more than one), in the possession of Lender (or in the possession of a third party subject to the control of Lender), whether existing now or later and whether tangible or intangible in character, including without limitation each and all of the following:

PNC Institutional Investment Account #21-60-001-3407321

In addition, the word "Collateral" includes all of Grantor's property (however owned), in the possession of Lender (or in the possession of a third party subject to the control of Lender), whether now or hereafter existing and whether tangible or intangible in character, including without limitation each of the following:

(A) All property to which Lender acquires title or documents of title.

(B) All property assigned to Lender.

(C) All promissory notes, bills of exchange, stock certificates, bonds, savings passbooks, time certificates of deposit, insurance policies, and all other instruments and evidences of an obligation.

(D) All records relating to any of the property described in this Collateral section, whether in the form of a writing, microfilm, microfiche, or electronic media.

(E) All Income and Proceeds from the Collateral as defined herein.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** Grantor represents and warrants to Lender that:

**Ownership.** Grantor is the lawful owner of the Collateral free and clear of all security interests, liens, encumbrances and claims of others except as disclosed to and accepted by Lender in writing prior to execution of this Agreement.

**Right to Pledge.** Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral.

**Authority; Binding Effect.** Grantor has the full right, power and authority to enter into this Agreement and to grant a security interest in the Collateral to Lender. This Agreement is binding upon Grantor as well as Grantor's successors and assigns, and is legally enforceable in accordance with its terms. The foregoing representations and warranties, and all other representations and warranties contained in this Agreement are and shall be continuing in nature and shall remain in full force and effect until such time as this Agreement is terminated or cancelled as provided herein.

**No Further Assignment.** Grantor has not, and shall not, sell, assign, transfer, encumber or otherwise dispose of any of Grantor's rights in the Collateral except as provided in this Agreement.

**No Defaults.** There are no defaults existing under the Collateral, and there are no offsets or counterclaims to the same. Grantor will strictly and promptly perform each of the terms, conditions, covenants and agreements, if any, contained in the Collateral which are to be performed by Grantor.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**LENDER'S RIGHTS AND OBLIGATIONS WITH RESPECT TO THE COLLATERAL.** Lender may hold the Collateral until all Indebtedness has been paid and satisfied. Thereafter Lender may deliver the Collateral to Grantor or to any other owner of the Collateral. Lender shall have the following rights in addition to all other rights Lender may have by law:

**Maintenance and Protection of Collateral.** Lender may, but shall not be obligated to, take such steps as it deems necessary or desirable to protect, maintain, insure, store, or care for the Collateral, including paying of any liens or claims against the Collateral. This may include such things as hiring other people, such as attorneys, appraisers or other experts. Lender may charge Grantor for any cost incurred in so doing. When applicable law provides more than one method of perfection of Lender's security interest, Lender may choose the method(s) to be used. If the Collateral consists of stock, bonds or other investment property for which no certificate has been issued, Grantor agrees, at Lender's request, either to request issuance of an appropriate certificate or to give instructions on Lender's forms to the issuer, transfer agent, mutual fund company, or broker, as the case may be, to record on its books or records Lender's security interest in the Collateral. Grantor also agrees to execute any additional documents, including but not limited to, a control agreement, necessary to perfect Lender's security interest as Lender may desire.

**Income and Proceeds from the Collateral.** Lender may receive all Income and Proceeds and add it to the Collateral. Grantor agrees to deliver to Lender immediately upon receipt, in the exact form received and without commingling with other property, all Income and Proceeds from the Collateral which may be received by, paid, or delivered to Grantor or for Grantor's account, whether as an addition to, in discharge of, in substitution of, or in exchange for any of the Collateral.

**Application of Cash.** At Lender's option, Lender may apply any cash, whether included in the Collateral or received as Income and Proceeds or through liquidation, sale, or retirement, of the Collateral, to the satisfaction of the Indebtedness or such portion thereof as Lender shall choose, whether or not matured.

**EXHIBIT**

C

COMMERCIAL PLEDGE AGREEMENT
(Continued)

**Transactions with Others.** Lender may (1) extend time for payment or other performance, (2) grant a renewal or change in terms or conditions, or (3) compromise, compound or release any obligation, with any one or more Obligors, endorsers, or Guarantors of the Indebtedness as Lender deems advisable, without obtaining the prior written consent of Grantor, and no such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

**All Collateral Secures Indebtedness.** All Collateral shall be security for the Indebtedness, whether the Collateral is located at one or more offices or branches of Lender. This will be the case whether or not the office or branch where Grantor obtained Grantor's loan knows about the Collateral or relies upon the Collateral as security.

**Collection of Collateral.** Lender at Lender's option may, but need not, collect the Income and Proceeds directly from the Obligors. Grantor authorizes and directs the Obligors, if Lender decides to collect the Income and Proceeds, to pay and deliver to Lender all Income and Proceeds from the Collateral and to accept Lender's receipt for the payments.

**Additional Authorizations.** Grantor irrevocably authorizes Lender, with full power of substitution, to do any of the following, either in Lender's own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem necessary or advisable: (a) to demand, collect, receive, receipt for, sue and recover all Income and Proceeds and other sums of money and other property which may now or hereafter become due, owing or payable from the Obligors in accordance with the terms of the Collateral; (b) to execute, sign and endorse any and all instruments, receipts, checks, drafts and warrants issued in payment for the Collateral; (c) to settle or compromise any and all claims arising under the Collateral, and execute and deliver any release and acquittance therefor; (d) to file any claim or claims or to take any action or institute or take part in any proceedings; and (e) to execute and deliver to the Obligors, at the time and in the manner specified by the Collateral, any necessary instruments or documents. It is understood and agreed that any exercise of this authorization by Lender shall be on behalf of Lender and not on behalf of Grantor. Lender is not an agent or fiduciary of Grantor. However, in exercising the authorization granted hereby, Lender shall exercise reasonable caution and prudence and Lender shall keep full and accurate record of all actions, receipts and disbursements.

**Perfection of Security Interest.** Upon Lender's request, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral. When applicable law provides more than one method of perfection of Lender's security interest, Lender may choose the method(s) to be used. Upon Lender's request, Grantor will sign and deliver any writings necessary to perfect Lender's security interest. Grantor hereby irrevocably authorizes Lender to execute any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**LIMITATIONS ON OBLIGATIONS OF LENDER.** Lender shall use ordinary reasonable care in the physical preservation and custody of the Collateral in Lender's possession, but shall have no other obligation to protect the Collateral or its value. In particular, but without limitation, Lender shall have no responsibility for (A) any depreciation in value of the Collateral or for the collection or protection of any Income and Proceeds from the Collateral, (B) preservation of rights against parties to the Collateral or against third persons, (C) ascertaining any maturities, calls, conversions, exchanges, offers, tenders, or similar matters relating to any of the Collateral, or (D) informing Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters. Except as provided above, Lender shall have no liability for depreciation or deterioration of the Collateral.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's or any Grantor's ability to repay the Indebtedness or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Insufficient Market Value of Securities.** : The Collateral to loan percentage falls below 75.00%; and as a result of the deterioration of the market value of the Collateral, Grantor does not, by the close of business on the next business day after Grantor has received notice from Lender of the deterioration, either (1) reduce the amount of the Indebtedness in this loan as required by Lender or (2) pledge or grant an additional security interest to increase the value of the Collateral as required by Lender.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Cure Provisions.** If any default, other than a default in payment or failure to satisfy Lender's requirement in the Insufficient Market Value of Securities section is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Declare all Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately

COMMERCIAL PLEDGE AGREEMENT

Loan No: 9011003135                              (Continued)                                    Page 3

due and payable, without notice of any kind to Grantor.

**Collect the Collateral.** Collect any of the Collateral and, at Lender's option and to the extent permitted by applicable law, retain possession of the Collateral while suing on the Indebtedness.

**Sell the Collateral.** Sell the Collateral, at Lender's discretion, as a unit or in parcels, at one or more public or private sales. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender shall give or mail to Grantor, and other persons as required by law, notice at least ten (10) days in advance of the time and place of any public sale, or of the time after which any private sale may be made. However, no notice need be provided to any person who, after an Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. Grantor agrees that any requirement of reasonable notice as to Grantor is satisfied if Lender mails notice by ordinary mail notice addressed to Grantor at the last address Grantor has given Lender in writing. If a public sale is held, there shall be sufficient compliance with all requirements of notice to the public by a single publication in any newspaper of general circulation in the county where the Collateral is located, setting forth the time and place of sale and a brief description of the property to be sold. Lender may be a purchaser at any public sale.

**Sell Securities.** Sell any securities included in the Collateral in a manner consistent with applicable federal and state securities laws. If, because of restrictions under such laws, Lender is unable, or believes Lender is unable, to sell the securities in an open market transaction, Grantor agrees that Lender will have no obligation to delay sale until the securities can be registered. Then Lender may make a private sale to one or more persons or to a restricted group of persons, even though such sale may result in a price that is less favorable than might be obtained in an open market transaction. Such a sale will be considered commercially reasonable. If any securities held as Collateral are "restricted securities" as defined in the Rules of the Securities and Exchange Commission (such as Regulation D or Rule 144) or the rules of state securities departments under state "Blue Sky" laws, or if Grantor or any other owner of the Collateral is an affiliate of the issuer of the securities, Grantor agrees that neither Grantor, nor any member of Grantor's family, nor any other person signing this Agreement will sell or dispose of any securities of such issuer without obtaining Lender's prior written consent.

**Rights and Remedies with Respect to Investment Property, Financial Assets and Related Collateral.** In addition to other rights and remedies granted under this Agreement and under applicable law, Lender may exercise any or all of the following rights and remedies: (1) register with any issuer or broker or other securities intermediary any of the Collateral consisting of investment property or financial assets (collectively herein, "investment property") in Lender's sole name or in the name of Lender's broker, agent or nominee; (2) cause any issuer, broker or other securities intermediary to deliver to Lender any of the Collateral consisting of securities, or investment property capable of being delivered; (3) enter into a control agreement or power of attorney with any issuer or securities intermediary with respect to any Collateral consisting of investment property, on such terms as Lender may deem appropriate, in its sole discretion, including without limitation, an agreement granting to Lender any of the rights provided hereunder without further notice to or consent by Grantor; (4) execute any such control agreement on Grantor's behalf and in Grantor's name, and hereby irrevocably authorizes Lender to execute such control agreement on Grantor's behalf; (5) exercise any and all rights of Lender under any such control agreement or power of attorney; (6) exercise any voting, conversion, registration, purchase, option, or other rights with respect to any Collateral; (7) collect, with or without legal action, and issue receipts concerning any notes, checks, drafts, remittances or distributions that are paid or payable with respect to any Collateral consisting of investment property. Any control agreement entered with respect to any investment property shall contain the following provisions, at Lender's discretion. Lender shall be authorized to instruct the issuer, broker or other securities intermediary to take or to refrain from taking such actions with respect to the investment property as Lender may instruct, without further notice to or consent by Grantor. Such actions may include without limitation the issuance of entitlement orders, account instructions, general trading or buy or sell orders, transfer and redemption orders, and stop loss orders. Lender shall be further entitled to instruct the issuer, broker or securities intermediary to sell or to liquidate any investment property, or to pay the cash surrender or account termination value with respect to any and all investment property, and to deliver all such payments and liquidation proceeds to Lender. Any such control agreement shall contain such authorizations as are necessary to place Lender in "control" of such investment collateral, as contemplated under the provisions of the Uniform Commercial Code, and shall fully authorize Lender to issue "entitlement orders" concerning the transfer, redemption, liquidation or disposition of investment collateral, in conformance with the provisions of the Uniform Commercial Code.

**Foreclosure.** Maintain a judicial suit for foreclosure and sale of the Collateral.

**Transfer Title.** Effect transfer of title upon sale of all or part of the Collateral. For this purpose, Grantor irrevocably authorizes Lender to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than one) as shall be necessary or reasonable.

**Other Rights and Remedies.** Have and exercise any or all of the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, at law, in equity, or otherwise.

**Application of Proceeds.** Apply any cash which is part of the Collateral, or which is received from the collection or sale of the Collateral, to reimbursement of any expenses, including any costs for registration of securities, commissions incurred in connection with a sale, reasonable attorneys' fees and court costs, whether or not there is a lawsuit and including any fees on appeal, incurred by Lender in connection with the collection and sale of such Collateral and to the payment of the Indebtedness of Grantor to Lender, with any excess funds to be paid to Grantor as the interests of Grantor may appear. Grantor agrees, to the extent permitted by law, to pay any deficiency after application of the proceeds of the Collateral to the Indebtedness.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees equal to 20.000% of the principal balance due on the Indebtedness and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees equal to 20.000% of the principal balance due on the Indebtedness and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees equal to 20.000% of the principal balance due on the Indebtedness and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Collateral, this Agreement will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania. In all other respects, this Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Agreement is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Agreement has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the Commonwealth of Virginia.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**COMMERCIAL PLEDGE AGREEMENT**

| Loan No: 9011003135 | (Continued) | Page 4 |
|---|---|---|

**Notices.** Unless otherwise provided by applicable law, any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided by applicable law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successor Interests.** The terms of this Agreement shall be binding upon Grantor, and upon Grantor's heirs, personal representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Pledge Agreement, as this Commercial Pledge Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Pledge Agreement from time to time.

**Borrower.** The word "Borrower" means National Heritage Foundation, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means National Heritage Foundation, Inc..

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Income and Proceeds.** The words "Income and Proceeds" mean all present and future income, proceeds, earnings, increases, and substitutions from or for the Collateral of every kind and nature, including without limitation all payments, interest, profits, distributions, benefits, rights, options, warrants, dividends, stock dividends, stock splits, stock rights, regulatory dividends, subscriptions, monies, claims for money due and to become due, proceeds of any insurance on the Collateral, shares of stock of different par value or no par value issued in substitution or exchange for shares included in the Collateral, and all other property Grantor is entitled to receive on account of such Collateral, including accounts, documents, instruments, chattel paper, and general intangibles.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. The liens and security interests created pursuant to this Agreement covering the Indebtedness which may be created in the future shall relate back to the date of this Agreement. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means Virginia Heritage Bank, its successors and assigns.

**Note.** The word "Note" means the Note executed by National Heritage Foundation, Inc. in the principal amount of $6,500,000.00 dated December 27, 2007, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Obligor.** The word "Obligor" means without limitation any and all persons obligated to pay money or to perform some other act under the Collateral.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL PLEDGE AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED DECEMBER 27, 2007.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

NATIONAL HERITAGE FOUNDATION, INC.

By: _____ (Seal)
    Janet H. Ridgely, Vice President of National Heritage
    Foundation, Inc.

LENDER:

VIRGINIA HERITAGE BANK

By: _____ (Seal)
    Authorized Signer

LASER PRO Lending, Ver. 5.37.00.003  Copr. Harland Financial Solutions, Inc. 1997, 2007.  All Rights Reserved.  - PA/VA  D:\APPS\HARLAND\CFI\LPL\E03.FC  TR-403  PR-10

<u>Exhibit D to Motion for Relief from Stay</u>

The collateral securing both notes includes the following accounts:

| | |
|---|---|
| Phoenix Life Ins. (account no. 2756393) | $1,129,641.52 |
| Sterne Agee/McKim Capital (account no. 62200740) | $5,315,551.11* |
| Lincoln Financial Group (account no. 659029633) | $294,717.54 |
| Lincoln Financial Group (account no. 659029925) | $252,320.70 |
| Delp/LPL (account no. 2262-4424) | $113,387.25* |
| Delp/LPL (account no. 3687-2542) | $68,457.51* |
| Delp/LPL (account no. 4617-3529) | $407,747.57* |
| Delp/LPL (account no. 6952-5280) | $182,207.54* |
| Delp/LPL (account no. 6952-5282) | $217,663.51* |
| Delp/LPL (account no. 7455-7946) | $77,121.95* |
| Delp/LPL (account no. 7331-9625) | $100,763.12* |
| Delp/LPL (account no. 7944-8118) | $121,241.62* |
| EquiTrust Life Ins. Co. (account no. EQ0001012408F) | $1,296,123.01 |
| American National Life Insurance (no. LWS0040219) | $337,926.28 |
| American National Life Insurance (no. LWS0041966) | $759,209.19 |

The Bank also contends that the account currently held by the Debtor at the Bank
constitutes the Bank's collateral.

*The valuations for these accounts are based upon the most recent statement provided to
the Bank. However, these accounts consist of securities and therefore are subject to the
fluctuations of the stock market.

#1084323v1 jwrpl-exhibit c motion relief stay 49667/00005



Form No. 10—LIFE INSURANCE ASSIGNMENT

**SEE REVERSE SIDE FOR
COMMENTS AND INSTRUCTIONS**

FORM APPROVED BY
BANK MANAGEMENT COMMISSION
AMERICAN BANKERS ASSOCIATION

# ASSIGNMENT OF LIFE INSURANCE POLICY AS COLLATERAL

A.  *For Value Received* the undersigned hereby assign, transfer and set over to _____
**Virginia Heritage Bank** _____

Its successors and assigns, (herein called the "Assignee") Policy No. **2,756,393** _____ issued by the

## PHOENIX LIFE INSURANCE COMPANY • PHL VARIABLE INSURANCE COMPANY • PHOENIX LIFE AND ANNUITY COMPANY

(herein called the "Insurer") and any supplementary contracts issued in connection therewith (said policy and contracts being herein called the "Policy") upon the life of _____ **Beatrice Maxine Barber** _____
of **Falls Church, Virginia** _____ and all claims, options, privileges, rights, title and interest herein and thereunder (except as provided in Paragraph C hereof), subject to all the terms and conditions of the Policy and to all superior liens, if any, which the Insurer may have against the Policy. The undersigned by this instrument jointly and severally agree and the Assignee by the acceptance of this assignment agrees to the conditions and provisions herein set forth.

B.  It is expressly agreed that, without detracting from the generality of the foregoing, the following specific rights are included in this assignment and pass by virtue hereof:
  1. The sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity;
  2. The sole right to surrender the Policy and receive the surrender value thereof at any time provided by the terms of the Policy and at such other times as the Insurer may allow;
  3. The sole right to obtain one or more loans or advances on the Policy, either from the Insurer or, at any time, from other persons, and to pledge or assign the Policy as security for such loans or advances;
  4. The sole right to collect and receive all distributions or shares of surplus, dividend deposits or additions to the Policy now or hereafter made or apportioned thereto, and to exercise any and all options contained in the Policy with respect thereto; provided, that unless and until the Assignee shall notify the Insurer in writing to the contrary, the distributions or shares of surplus, dividend deposits and additions shall continue on the plan in force at the time of this assignment; and
  5. The sole right to exercise all nonforfeiture rights permitted by the terms of the Policy or allowed by the Insurer and to receive all benefits and advantages derived therefrom.

C.  It is expressly agreed that the following specific rights, so long as the Policy has not been surrendered, are reserved and excluded from this assignment and do not pass by virtue hereof:
  1. The right to collect from the Insurer any disability benefit payable in cash that does not reduce the amount of Insurance;
  2. The right to designate and change the beneficiary;
  3. The right to elect any optional mode of settlement permitted by the Policy or allowed by the Insurer;
  but the reservation of these rights shall in no way impair the right of the Assignee to surrender the Policy completely with all its incidents or impair any other right of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made subject to this assignment and to the rights of the Assignee hereunder.

D.  This assignment is made and the Policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them, to the Assignee, either now existing or that may hereafter arise in the ordinary course of business between any of the undersigned and the Assignee (all of which liabilities secured or to become secured are herein called "Liabilities").

E.  The Assignee covenants and agrees with the undersigned as follows:
  1. That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the Policy had this assignment not been executed;
  2. That the Assignee will not exercise either the right to surrender the Policy or (except for the purpose of paying premiums) the right to obtain policy loans from the Insurer, until there has been default in any of the Liabilities or a failure to pay any premium when due, nor until twenty days after the Assignee shall have mailed, by first-class mail, to the undersigned at the addresses last supplied in writing to the Assignee specifically referring to this assignment, notice of intention to exercise such right; and
  3. That the Assignee will upon request forward without unreasonable delay to the Insurer the Policy for endorsement of any designation or change of beneficiary or any election of an optional mode of settlement.

F.  The Insurer is hereby authorized to recognize the Assignee's claims to rights hereunder without investigating the reason for any action taken by the Assignee, or the validity or the amount of the Liabilities or the existence of any default therein, or the giving of any notice under Paragraph E (2) above or otherwise, or the application to be made by the Assignee of any amounts to be paid to the Assignee. The sole signature of the Assignee shall be sufficient for the exercise of any rights under the Policy assigned hereby and the sole receipt of the Assignee for any sums received shall be a full discharge and release to the exclusive order of the Assignee if, when, and in such amounts as may be, requested by the Assignee.

G.  The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the Policy whether or not obtained by the Assignee, or any other charges on the Policy, but any such amounts so paid by the Assignee from its own funds, shall become a part of the Liabilities hereby secured, shall be due immediately, and shall draw interest at a rate fixed by the Assignee from time to time not exceeding 6% per annum.

H.  The exercise of any right, option, privilege or power given herein to the Assignee shall be at the option of the Assignee, but (except as restricted by Paragraph E (2) above) the Assignee may exercise any such right, option, privilege or power without notice to, or assent by, or affecting the liability of, or releasing any interest hereby assigned by the undersigned, or any of them.

I.  The Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities, may grant extensions, renewals or indulgences with respect to the Liabilities, or may apply to the Liabilities in such order as the Assignee shall determine, the proceeds of the Policy hereby assigned or any amount received on account of the Policy by the exercise of any right permitted under this assignment, without resorting or regard to other security.

J.  In the event of any conflict between the provisions of this assignment and provisions of the note or other evidence of any Liability, with respect to the Policy or rights of collateral security therein, the provisions of this assignment shall prevail.

K.  Each of the undersigned declares that no proceedings in bankruptcy are pending against him and that his property is not subject to any assignment for the benefit of creditors.

Signed and sealed this ___12TH___ day of __DECEMBER__ 20 08 .

_____     _____ (L.S.)
Witness                                                          Owner
11166 FAIRFAX BLVD, SUITE 100                6201 Loosburg Pike
FAIRFAX, VA 22030                                  National Heritage Fdn
_____     _____ (L.S.)
Witness                                                          Beneficiary
                                                                     6201 Leesburg Pike #405
                                                                     Address
                                                                     Falls Church VA 22044

525 3-84

**EXHIBIT**

E-1

ALL-STATE LEGAL®

**INDIVIDUAL ACKNOWLEDGMENT**

STATE OF _Virginia_
COUNTY OF _Fairfax_ } ss:

On this _15th_ day of _December_ 20 _08_ , before me personally came _____ , to me known to be the individual _____ described in and who executed the assignment on the reverse side hereof and acknowledged to me that __ he __ executed the same.

_Helen S. Smith_
Notary Public
_#251823_

My commission expires _Oct 31 2009_

**CORPORATE ACKNOWLEDGMENT**

STATE OF _Virginia_
COUNTY OF _Fairfax_ } ss:

On this ____ day of _December_ 20 _08_ , before me personally came _Jan Ridgely_ and _____ who being by me duly sworn, did depose and say that they are the _Vice President_ _____ , respectively of _National Heritage Foundation_ the corporation described in and which executed such corporate assignment on the reverse side hereof; that they know the seal of said corporation; that the seal affixed to said assignment is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that they signed their names thereto by like order.

_Robin Lynn Cunningham_
Notary Public

My commission expires _7-31-2010_

**HOME OFFICE ACKNOWLEDGMENT**

Duplicate received and filed at the Home Office of the Insurer, this _16_ day of _December_ 20 _08_

PHOENIX LIFE INSURANCE COMPANY
PHL VARIABLE INSURANCE COMPANY
PHOENIX LIFE AND ANNUITY COMPANY

By _____          Authorized Signature

**RELEASE OF ASSIGNMENT**

_____ , 20 _____

For value received, all right, title and interest of the undersigned assignee in and to the policy of life insurance conveyed by the within assignment is hereby relinquished and released.

Witness _____          _____

Witness _____          _____

} ss:          **AFFIDAVIT**

STATE OF _____

COUNTY OF _____

Then personally appeared _____ and _____
known to me to be the _____ and _____
respectively of the _____
on this _____ day of _____ , 20 ____ , who acknowledged the foregoing instrument to be _____ free act and deed.
My commission expires _____          _____

Notary Public

PHOENIX LIFE INSURANCE COMPANY
PHL VARIABLE INSURANCE COMPANY
PHOENIX LIFE AND ANNUITY COMPANY

Received at the Home Office on _____          Recorded by _____

**COMMENTS**

This American Bankers Association Form No. 10 is furnished for the convenience of policyholders of Phoenix Life Insurance Company. Life insurance policies in general, and those of this Company, provide that no responsibility is assumed by the Company as to the validity, or effect of any assignment.

**INSTRUCTIONS**

1. The original and duplicate of any completed assignment should be filed at the Home Office of our Company. The original will be marked with a notation of its receipt and filing and returned to the assignee and the duplicate retained at the Home Office.

2. A separate assignment should be used for each individual policy.

3. When the assignment is released, the assignee's completed copy should be filed at our Home Office. Receipt of the release of assignment will be acknowledged.

# STERNE AGEE
## PLEDGE AGREEMENT

    This Agreement dated <u>January 11, 2008</u> is by and between <u>National Heritage</u> <u>Foundation, Inc.</u> (the "Pledgor") and <u>Virginia Heritage Bank</u> (the "Bank").

    WHEREAS, the Bank has extended to the Pledgor a loan in the amount of $<u>7,500,000</u> (as such loan may be modified from time to time, the "Loan") evidenced by a note dated <u>Dec. 27, 2007</u>; and

    WHEREAS, in order to induce the Bank to make the Loan, the Pledgor has agreed to secure the payment in full of the Obligation (as hereinafter defined) to the Bank by means of the pledge of Account # <u>6220074 0</u>, styled as "<u>             </u> <u>            </u> Pledged Account For the Benefit of <u>NHF</u>", at Sterne, Agee & Leach, Inc. (Sterne Agee) as such account may be constituted from time to time (the "Account"), including, but not limited to, all cash and other investments presently held in the Account or hereafter held in the Account in the name of the Pledgor or in the name of Sterne Agee for the benefit of the Pledgor.

    NOW THEREFORE, in consideration of the Bank agreeing to extend the Loan and for the consideration recited herein, the Pledgor and the Bank agree as follows:

SECTION 1. <u>PLEDGE</u>.

    As security for the prompt and complete payment when due from time to time of all indebtedness for principal and interest on any promissory note or otherwise, of the Pledgor to the Bank, whether now existing or hereafter incurred, together with all costs and expenses incurred by the Bank in the collection of any such indebtedness and all future advances made by the Bank for the maintenance, preservation, protection or enforcement of all such indebtedness, costs, expenses and advances being hereinafter collectively called (the "Obligation"), the Pledgor hereby pledges, assigns, sets over and transfers to the Bank, and grants in favor to the Bank, a Uniform Commercial Code security interest in all of the Pledgor's right, title and interest in the Account, all securities now in the Account or hereafter held in the Account (collectively, the "Collateral"), to be held by Sterne Agee, as agent for the Bank, upon the terms and conditions set forth in this Agreement.

- 1 -



EXHIBIT

E-2

SECTION 2. <u>RIGHT TO TRADE COLLATERAL /AGREEMENT TO DELIVER ADDITIONAL COLLATERAL</u>

  (a) Unless and until an Event of Default (as defined in Section 6 hereof) shall have occurred and be continuing, the Pledgor or his agent shall be entitled to exercise sole discretion in buying or selling the Collateral in the Account; however, the proceeds from any sale shall remain in the Account or shall be used to buy additional securities which shall at all times maintain the Collateral for the Loan in the Account having a fair market value from time to time equal to $ 8,339,750 .

  (b) If the value of the Collateral in the Account shall fall below $ 8,339,750 , the Pledgor agrees to deliver additional collateral to the Account to fully secure payment of the Obligation.

SECTION 3. <u>APPOINTMENT OF AGENT.</u>

The Bank may hold or shall have the right to appoint and substitute one or more agents for the purpose of maintaining physical possession of the Collateral, which may be held (at the discretion of the Bank) in the name of the Pledgor, endorsed or assigned in blank, or in favor of the Bank or any nominee or nominees of the Bank or in the name of an agent appointed by the Bank or its nominee. Any such agent shall, upon the request of the Bank, deliver any Collateral to the Bank.

SECTION 4. <u>VOTING ETC. PRIOR TO EVENT OF DEFAULT.</u>

Unless and until an Event of Default (as defined in Section 6 hereof) shall have occurred and be continuing, the Pledgor shall be entitled to vote any and all shares of the Collateral and to give consents, waiver or ratification in respect thereof. All such rights of the Pledgor to vote and to give consents, waivers and ratification in respect thereof shall cease if an Event of Default shall occur and be continuing and Section 6 hereof shall become applicable.

SECTION 5. <u>INTEREST, DIVIDENDS AND OTHER DISTRIBUTIONS.</u>

Unless an Event of Default shall have occurred and be continuing, all cash distributions (including interest and dividends) payable with respect to the Collateral may be withdrawn by the Pledgor, provided that all such distributions payable with respect to the Collateral, which are determined by the Bank, at its absolute discretion, to represent, in whole or in part, an extraordinary, liquidating or other return of capital, shall be retained in the Account as part of the Collateral. The Bank shall also be entitled to retain as part of the Collateral:

  (a) all securities or property (other than cash) paid or distributed by way of dividend with respect to the Collateral;

- 2 -

(b) all securities or property (including cash) paid or distributed by way of stock-split, spin-off, split-up, reclassification, combination of shares or similar arrangement; and

(c) all securities or property (including cash) which may be paid with respect to the Collateral by reason of any consolidation, merger, exchange of stock, conveyance of assets, liquidation or similar corporate reorganization.

SECTION 6. <u>DEFAULT REMEDIES</u>.

If the Pledgor shall default in the payment of the Obligation; or shall default in the performance or observance of any of the covenants or agreements of the Pledgor contained in this Agreement; or any representation or warranty contained in this Agreement shall prove to have been false or misleading when made (any of the foregoing being an "Event of Default"), then the Bank shall have such rights and remedies with respect to the Collateral, or any part thereof, as are provided by the Uniform Commercial Code and such other rights and remedies with respect thereto which it may have at law or in equity or under this Agreement for the protection and enforcement of its rights with respect to the Collateral.

SECTION 7. <u>REMEDIES CUMULATIVE</u>.

Each right, power and remedy of the Bank provided for in this Agreement or in any of the other instruments or agreements securing the Obligations now or hereafter existing at law or in equity or by statute shall be cumulative and concurrent and shall be in addition to every other such right, power or remedy.  No failure or delay on the part of the Bank to exercise any such right, power or remedy shall operate as a waiver thereof.

SECTION 8. <u>PAYMENT OF BANK'S EXPENSES</u>.

The Pledgor agrees to pay the Bank, as soon as incurred, all reasonable costs and expenses, including without limitation all attorney's fees, related or incidental to the care, holding, retaking, preparing for sale, selling or realization upon any of the Collateral or to the establishment of any of the rights of the Bank hereunder.

SECTION 9. <u>REPRESENTATIONS AND WARRANTIES</u>.

As an inducement to the Bank to enter into this Agreement and to make the Loan, the Pledgor represents and warrants that (a) Pledgor has the power and authority to enter into this Agreement and to pledge and assign the Collateral to the Bank, (b) this Agreement creates a security interest in the Collateral, and such security interest is first and prior to all other liens, (c) no consent of any other party (including, without limitation, creditors of the Pledgor) is required to be obtained by the Pledgor in connection with the execution, delivery or performance of this Agreement, and (d) none of the Collateral consists of restricted securities or is subject to any limitation on the

Pledgor's right to sell or transfer the Collateral. The Pledgor convenants and agrees that it will defend the Bank's right, title and security interest in and to the Collateral against the claims and demands of all other persons.

## SECTION 10. PLEDGOR'S OBLIGATIONS ABSOLUTE, ETC.

The Obligation of the Pledgor under this Agreement shall be absolute and unconditional and shall remain in full force and effect without regard to, and shall not be released, suspended, discharged, terminated or otherwise affected by, any circumstances or occurrence whatsoever.

## SECTION 11. TERMINATION/RELEASE.

Upon the payment (or prepayment) in full of all the principal and interest on the Loan in accordance with the terms thereof, or the payment (or the making of a provision satisfactory to the Bank for the payment) of all other Obligations, this Agreement shall terminate, and the Bank, at the request and expense of the Pledgor, will execute and deliver to the Pledgor a proper instrument or instruments acknowledging the satisfaction and termination of this Agreement, and will duly assign, transfer and deliver to the Pledgor (without recourse and without any representation or warranty) such of the Collateral as may be in the possession of the Bank or the Bank's agent and as has not theretofore been sold or otherwise applied or released pursuant to this Agreement.

## SECTION 12. MISCELLANEOUS.

This Agreement shall be binding upon the successors and assigns of the Pledgor and shall inure to the benefit of and be enforceable by the Bank and its successors and assigns. This Agreement may only be changed, waived, discharged or terminated by an instrument in writing signed by the party against which enforcement of such change, waiver, discharge or termination is sought. Any waiver shall be effective only to the extent specifically set forth in such writing. The Bank shall not be obligated to assert or enforce any rights or security interest hereunder or to take any such action in reference thereto and the Bank may in its discretion at any time relinquish its rights as to a portion of the Collateral without thereby affecting or invalidating its rights hereunder as to any other portion of the Collateral. This Agreement shall be governed by and construed in accordance with the laws of the State of _____. The headings in this Agreement are for purposes of reference only and shall not limit or define the meaning hereof. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which shall constitute one instrument. In the event that any provision of this Agreement shall prove to be invalid or unenforceable, such provision shall be deemed to be severable from the other provisions of this Agreement which shall remain binding on all parties hereto.

## SECTION 13. INDEMNIFICATION

The Pledgor agrees to indemnify and hold harmless Sterne Agee, its subsidiaries and affiliates, each person who controls Sterne Agee and/or its affiliates, the officers, directors, agents and/or employees of Sterne Agee and of its affiliates to the fullest extent permitted by law from and against any and all claims, actions, proceedings, demands, liabilities, damages, judgments, assessments, losses and costs, including fees and expenses, in any way related to, arising out of or based upon any action taken by any party on behalf of the Account, and will reimburse Sterne Agee for all such fees and expenses including, but not limited to, the fees and expenses as they are incurred by Sterne Agee in connection with pending or threatened litigation whether or not Sterne Agee is a party.

IN WITNESS WHEREOF, the Pledgor and the Bank have caused this Agreement to be executed by their duly elected officers duly authorized as of the date first above written.

BY _____ (SEAL)
         Pledgor's Signature

BY _____ (SEAL)
         Bank Signature

Print Name _Cindy L. Fusselle_

Title _Sr. Credit Officer_

- 5 -

# ACKNOWLEDGEMENT

Sterne Agee acknowledges the pledge of Account # ̲6̲2̲2̲0̲0̲9̲4̲0̲ as it may be constituted from time to time (including, but not limited to, securities and proceeds thereof, cash, and other investments now or hereafter held in the Account, whether in the name of the Pledgor or in street name for the benefit of the Pledgor). Upon the written request of the Bank, Sterne Agee will deliver physical possession of the securities, cash and other investments in the Account to the Bank, registered in the name of the Bank or its nominee.

Sterne Agee agrees that it will not allow any withdrawals of money or securities from the Account, except in accordance with the terms of this Agreement or with written permission of the Bank, and will furnish the Bank with copies of monthly statements of the Account.

Sterne, Agee & Leach, Inc.

By: ̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲

Title: ̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲

1-18-08

The Pledgor specifically authorizes Sterne Agee to deliver physical possession of the securities, cash and other investments in the Account to the Bank, registered in the name of the Bank or its' nominee, should the Bank present Sterne Agee with a written request demanding such delivery.

The Pledgor agrees to pay, and authorizes Sterne Agee to debit the Account, $50.00 for an initial set up charge and $50.00 as an annual fee for each year this Agreement remains in effect.

̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲

Pledgor Signature

̲J̲o̲h̲n̲ ̲T̲ ̲H̲o̲s̲k̲,̲ ̲P̲r̲e̲s̲i̲d̲e̲n̲t̲

Print Name

Rev: 4-5-05

- 6 -

 **Lincoln**
Financial Group®

Please check appropriate underwriting company:
☒ The Lincoln National Life Insurance Company
☐ Lincoln Life & Annuity Company of New York



## ASSIGNMENT OF LIFE INSURANCE OR ANNUITY POLICY CONTRACT AS COLLATERAL SECURITY

POLICY OR CONTRACT NUMBER(S) _____ 659029633 _____   INSURED OR ANNUITANT _____ Susan E. Loosen _____

ASSIGNEE _____ Virginia Heritage Bank _____

ADDRESS _____ 11166 Fairfax Blvd., Ste.100, Fairfax, Virginia 22030 _____
STREET                         CITY            STATE          ZIP CODE

This Collateral Assignment is made as collateral security for the purpose of securing the following indebtedness or obligation (type and amount):

$6.5 million time loan

$2 million line of credit

and any future indebtedness or obligation of the Undersigned to the Assignee.

For Value Received, the Undersigned hereby assigns, transfers and conveys to the Assignee, as collateral security for the above-mentioned indebtedness or obligation, the policy(ies) or contract(s) indicated above and all rights to the proceeds and benefits thereunder, except as stated in paragraph 2 below. This Collateral Assignment applies to any policy(ies) or contract(s) to which the above policy(ies) or contract(s) is changed or converted, and to any additions to or increases in the above policy(ies) or contract(s).

1.  It is expressly agreed without detracting from the generality of the foregoing that the following specific rights are included in this Collateral Assignment and pass by virtue hereof:
    a.  The sole right to collect from the Company the net proceeds of the above policy(ies) or contract(s), or of any benefit or rider which is part of the above policy(ies) or contract(s) when it becomes a claim by death or maturity.
    b.  The sole right to surrender or borrow on as permitted by the terms of the above policy(ies) or contract(s) or any benefit or rider which is a part of the policy(ies) or contract(s) and to receive the surrender or loan value thereof.
    c.  The sole right to exercise or elect all nonforfeiture benefits or options permitted by the terms of the above policy(ies) or Contract(s) or allowed by the Company, and to receive all benefits and advantages derived therefrom.
    d.  The sole right to collect and receive all dividends, dividend deposits or paid-up additions, if any, to the above policy(ies) or contract(s) now or hereafter made or apportioned thereto, and to exercise all dividend options, if any, contained in the above policy(ies) or contract(s); provided, that unless and until the Assignee notifies the Company in writing to the contrary, dividends, if any, will continue to be paid to the Undersigned, or applied under the dividend option, if any, in force at the time of this Agreement.
2.  It is expressly agreed that the following specific rights, while the above policy(ies) or contract(s) remain in force, are reserved and excluded from this Collateral Assignment and do not pass by virtue hereof:
    a.  The right to collect from the Company any disability benefit payable in cash that does not reduce the amount of life insurance.
    b.  The right to designate and change the beneficiary.
    c.  The right to elect any settlement option permitted by the above policy(ies) or contract(s) or allowed by the Company.
3.  In complying with the rights and interests of the respective parties under this Collateral Assignment, the Company may rely on the written request of the Assignee or other proof of interest satisfactory to the Company without investigating the reason for any action taken by the Assignee, or the validity or the amount of the indebtedness or obligation or the existence of any default therein, or the application to be made by the Assignee of any amounts to be paid to the Assignee. In the event of any dispute between conflicting interests, the Company shall be entitled to have the respective interests determined by the proper court and the Company be reimbursed for its reasonable expenses out of any funds in its custody affected hereby.

Signed at _____ 6205 LEESBURG PIKE, SUITE 405, FALLS CHURCH, VA 22041 _____ on this _____ 12TH _____

day of _____ DECEMBER _____, _____ 2008 _____

_____
Witness

x _____ V.P.
Signature of Owner
If Corporation, signature of two titled Officers
Print NAMES and TITLES
JAN H. RIDGELY, V.P.
MARIAN M. HOUK, C.O.O.

Recorded by the Company
_____ Denise C. Cameron _____
Date: _____ December 24, 2008 _____

x _____

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
JPF-00058

Page 1 of 2
8/07

EXHIBIT
E-3
ALL-STATE LEGAL®



Please check appropriate underwriting company:
☒ The Lincoln National Life Insurance Company
☐ Lincoln Life & Annuity Company of New York



# ASSIGNMENT OF LIFE INSURANCE OR ANNUITY POLICY CONTRACT
# AS COLLATERAL SECURITY

POLICY OR
CONTRACT NUMBER(S)   659029925            INSURED OR
                                          ANNUITANT   Patricia L. Loosen

ASSIGNEE   **Virginia Heritage Bank**

ADDRESS   **11166 Fairfax Blvd. Ste. 100 Fairfax, Virginia 22030**
          STREET                       CITY          STATE         ZIP CODE

This Collateral Assignment is made as collateral security for the purpose of securing the following indebtedness or obligation (type and amount):

**$6.5 million time loan**
**$2 million line of credit**

and any future indebtedness or obligation of the Undersigned to the Assignee.

For Value Received, the Undersigned hereby assigns, transfers and conveys to the Assignee, as collateral security for the above-mentioned indebtedness or obligation, the policy(ies) or contract(s) indicated above and all rights to the proceeds and benefits thereunder, except as stated in paragraph 2 below. This Collateral Assignment applies to any policy(ies) or contract(s) to which the above policy(ies) or contract(s) is changed or converted, and to any additions to or increases in the above policy(ies) or contract(s).

1. It is expressly agreed without detracting from the generality of the foregoing that the following specific rights are included in this Collateral Assignment and pass by virtue hereof:
   a. The sole right to collect from the Company the net proceeds of the above policy(ies) or contract(s), or of any benefit or rider which is part of the above policy(ies) or contract(s) when it becomes a claim by death or maturity.
   b. The sole right to surrender or borrow on as permitted by the terms of the above policy(ies) or contract(s) or any benefit or rider which is a part of the policy(ies) or contract(s) and to receive the surrender or loan value thereof.
   c. The sole right to exercise or elect all nonforfeiture benefits or options permitted by the terms of the above policy(ies) or Contract(s) or allowed by the Company, and to receive all benefits and advantages derived therefrom.
   d. The sole right to collect and receive all dividends, dividend deposits or paid-up additions, if any, to the above policy(ies) or contract(s) now or hereafter made or apportioned thereto, and to exercise all dividend options, if any, contained in the above policy(ies) or contract(s); provided, that unless and until the Assignee notifies the Company in writing to the contrary, dividends, if any, will continue to be paid to the Undersigned, or applied under the dividend option, if any, in force at the time of this Agreement.

2. It is expressly agreed that the following specific rights, while the above policy(ies) or contract(s) remain in force, are reserved and excluded from this Collateral Assignment and do not pass by virtue hereof:
   a. The right to collect from the Company any disability benefit payable in cash that does not reduce the amount of life insurance.
   b. The right to designate and change the beneficiary.
   c. The right to elect any settlement option permitted by the above policy(ies) or contract(s) or allowed by the Company.

3. In complying with the rights and interests of the respective parties under this Collateral Assignment, the Company may rely on the written request of the Assignee or other proof of interest satisfactory to the Company without investigating the reason for any action taken by the Assignee, or the validity or the amount of the indebtedness or obligation or the existence of any default therein, or the application to be made by the Assignee of any amounts to be paid to the Assignee. In the event of any dispute between conflicting interests, the Company shall be entitled to have the respective interests determined by the proper court and the Company be reimbursed for its reasonable expenses out of any funds in its custody affected hereby.

Signed at   6201 LEESBURG PIKE, SUITE 405, FALLS CHURCH, VA 22044          on this   12TH

day of   DECEMBER          , 2008

_____                    x _____
     Witness                               Signature of Owner
                                           If Corporation, signature of two titled Officers
                                           Print NAMES and TITLES
                                           JAN H. RIDGELY, V.P.
                                           MARIAN M. HOUK, C.O.O.

Received by the Company  C. Cameron
Date:  December 24, 2008

                                           x _____

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.          Page 1 of 2
JPF-00058                                                                                                    8/07



EXHIBIT

E-4

# LPL Financial

9785 Towne Centre Drive
San Diego, CA 92121-1968

One Beacon Street, 22nd Floor
Boston, MA 02108-3106

January 12, 2009

*CC4A   CC4A*   **045CRN**

VIRGINIA HERITAGE BANK FBO
N H F FBO PASKIET FAMILY
FOUNDATION # 8442
COLLATERAL ACCOUNT
11166 FAIRFAX BLVD
FAIRFAX VA  22030

Account Number:  2262-4424

Dear Valued Client:

The information contained in the addressee portion of this letter reflects a recent change to the registration on the above account.

Please verify the new information for accuracy.  If it is correct, there is no action required.  However, if any portion is incorrect, please immediately notify us in writing at:

Attn:  New Accounts Department
LPL Financial
9785 Towne Centre Drive
San Diego CA  92121

Please note that you may receive two separate notices regarding this change.  We are required to send change notifications to both the old and new account addresses.

Thank you for allowing us the opportunity to service your account.

Sincerely,

Brad Fryer
Executive Vice President
Broker/Dealer Service & Operations

Member FINRA/SIPC

EXHIBIT

E-5

 **LPL Financial**

9785 Towne Centre Drive
San Diego, CA 92121-1968

One Beacon Street, 22nd Floor
Boston, MA 02108-3106

January 12, 2009

*CC4A   CC4A   045CRN*

ㅣ.ㅣ.ㅣ.ㅣ.ㅣㅣㅣㅣ...ㅣㅣㅣㅣ...ㅣㅣㅣㅣ...ㅣㅣㅣ...ㅣㅣㅣㅣ.ㅣ.ㅣ.ㅣ...ㅣㅣㅣ

VIRGINIA HERITAGE BANK FBO
N H F FBO MICHAEL & TERESA
BOYLE HERITAGE FOUNDATION
#1327149 -COLLATERAL ACCT-
11166 FAIRFAX BLVD
FAIRFAX VA  22030

000403

Account Number:  3687-2542

Dear Valued Client:

The information contained in the addressee portion of this letter reflects a recent change to the registration on the above account.

Please verify the new information for accuracy.  If it is correct, there is no action required.  However, if any portion is incorrect, please immediately notify us in writing at:

> Attn:  New Accounts Department
> LPL Financial
> 9785 Towne Centre Drive
> San Diego CA  92121

Please note that you may receive two separate notices regarding this change.  We are required to send change notifications to both the old and new account addresses.

Thank you for allowing us the opportunity to service your account.

Sincerely,

Brad Fryer
Executive Vice President
Broker/Dealer Service & Operations

**EXHIBIT**

ALL-STATE LEGAL®

E-6

ALPL9D30.LPLNEWSRT - 20090112 - 000403 - 000403

# ▟ LPL Financial

9785 Towne Centre Drive
San Diego, CA 92121-1968

One Beacon Street, 22nd Floor
Boston, MA 02108-3106

January 14, 2009

*CC4A   CC4A*   **045CRO**

VIRGINIA HERITAGE BANK FBO
N H F FBO JOAN E BAYER
FAMILY FOUNDATION #6012
COLLATERAL ACCOUNT
11166 FAIRFAX BLVD
FAIRFAX VA  22030

Account Number:  4617-3529

Dear Valued Client:

The registration on the above account was recently changed to the following:

VIRGINIA HERITAGE BANK FBO
N H F FBO JOAN E BAYER
FAMILY FOUNDATION #12161
COLLATERAL ACCOUNT
11166 FAIRFAX BLVD
FAIRFAX VA  22030

Please verify the new information for accuracy.  If it is correct, there is no action required.  However, if any portion is incorrect, please immediately notify us in writing at:

Attn:  New Accounts Department
LPL Financial
9785 Towne Centre Drive
San Diego CA  92121

Please note that you may receive two separate notices regarding this change.  We are required to send change notifications to both the old and new account addresses.

Thank you for allowing us the opportunity to service your account.

Sincerely,

Brad Fryer
Executive Vice President
Broker/Dealer Service & Operations

**EXHIBIT**

E-7

# ⊿ LPL Financial

9785 Towne Centre Drive
San Diego, CA 92121-1968

One Beacon Street, 22nd Floor
Boston, MA 02108-3106

January 12, 2009

*CC4A   CC4A*   **045CRN**

|ı.ı.lı.l.ıllı....l.l.ll....l.ı.ll.....lllı...ll.ı.l.ıl..ıl..l.ll

VIRGINIA HERITAGE BANK FBO
N H F FBO DELP FAMILY
FOUNDATION #5928
COLLATERAL ACCOUNT
11166 FAIRFAX BLVD
FAIRFAX VA  22030

Account Number:  6952-5280

Dear Valued Client:

The information contained in the addressee portion of this letter reflects a recent change to the registration on the above account.

Please verify the new information for accuracy.  If it is correct, there is no action required.  However, if any portion is incorrect, please immediately notify us in writing at:

> Attn:  New Accounts Department
> LPL Financial
> 9785 Towne Centre Drive
> San Diego CA  92121

Please note that you may receive two separate notices regarding this change.  We are required to send change notifications to both the old and new account addresses.

Thank you for allowing us the opportunity to service your account.

Sincerely,

Brad Fryer
Executive Vice President
Broker/Dealer Service & Operations

Member FINRA/SIPC

EXHIBIT

E-8

ALL-STATE LEGAL®

# ⊿ LPL Financial

9785 Towne Centre Drive
San Diego, CA 92121-1968

One Beacon Street, 22nd Floor
Boston, MA 02108-3106

January 12, 2009

*CC4A   CC4A   045CRN*

**Ialılalıllı....Ildıllı.....IllıallılılıllıalılıIlıllı....Idıl**

VIRGINIA HERITAGE BANK FBO
N H F FBO ROSS FAMILY
FOUNDATION #10633
COLLATERAL ACCOUNT
11166 FAIRFAX BLVD
FAIRFAX VA  22030

000830

Account Number:  6952-5282

Dear Valued Client:

The information contained in the addressee portion of this letter reflects a recent change to the registration on the above account.

Please verify the new information for accuracy.  If it is correct, there is no action required.  However, if any portion is incorrect, please immediately notify us in writing at:

Attn:  New Accounts Department
LPL Financial
9785 Towne Centre Drive
San Diego CA  92121

Please note that you may receive two separate notices regarding this change.  We are required to send change notifications to both the old and new account addresses.

Thank you for allowing us the opportunity to service your account.

Sincerely,

Brad Fryer
Executive Vice President
Broker/Dealer Service & Operations

Member FINRA/SIPC

**EXHIBIT**

ALL-STATE LEGAL®

E–9

# ↗ LPL Financial

9785 Towne Centre Drive
San Diego, CA 92121-1968

One Beacon Street, 22nd Floor
Boston, MA 02108-3106

January 12, 2009

*CC4A  CC4A  045CRN*

|ılılıılıllıııılıllıııluılıllıuıllııullıluılıuılull

VIRGINIA HERITAGE BANK FBO
N H F FBO CROWN FAMILY
HERITAGE FOUNDATION #8219
COLLATERAL ACCOUNT
11166 FAIRFAX BLVD
FAIRFAX VA  22030

Account Number:  7455-7946

Dear Valued Client:

The information contained in the addressee portion of this letter reflects a recent change to the registration on the above account.

Please verify the new information for accuracy.  If it is correct, there is no action required.  However, if any portion is incorrect, please immediately notify us in writing at:

Attn:  New Accounts Department
LPL Financial
9785 Towne Centre Drive
San Diego CA  92121

Please note that you may receive two separate notices regarding this change.  We are required to send change notifications to both the old and new account addresses.

Thank you for allowing us the opportunity to service your account.

Sincerely,

Brad Fryer
Executive Vice President
Broker/Dealer Service & Operations

Member FINRA/SIPC

**EXHIBIT**

E-10

ALL-STATE LEGAL®

ALPL9D30.LPLNEWSRT - 20090112 - 000900 - 000900

 **LPL Financial**

9785 Towne Centre Drive
San Diego, CA 92121-1968

One Beacon Street, 22nd Floor
Boston, MA 02108-3106

January 12, 2009

CP8B   CC4A   **045CRN**

VIRGINIA HERITAGE BANK FBO
N H F FBO ADAM FINN FAMILY
FOUNDATION #1226870
COLLATERAL ACCOUNT
11166 FAIRFAX BLVD
FAIRFAX VA 22030

000889

Account Number: 7331-9625

Dear Valued Client:

The information contained in the addressee portion of this letter reflects a recent change to the registration on the above account.

Please verify the new information for accuracy. If it is correct, there is no action required. However, if any portion is incorrect, please immediately notify us in writing at:

> Attn: New Accounts Department
> LPL Financial
> 9785 Towne Centre Drive
> San Diego CA 92121

Please note that you may receive two separate notices regarding this change. We are required to send change notifications to both the old and new account addresses.

Thank you for allowing us the opportunity to service your account.

Sincerely,

Brad Fryer
Executive Vice President
Broker/Dealer Service & Operations

Member FINRA/SIPC

**EXHIBIT**

E-11

# ◢▎ LPL Financial

9785 Towne Centre Drive
San Diego, CA 92121-1968

One Beacon Street, 22nd Floor
Boston, MA 02108-3106

January 12, 2009

*CP8B  CC4A*  **045CRN**

|.|.|.|.|.|||...||.||...||.|.|.||....|||...||....|||.|.|.|.|.||.|.|||

VIRGINIA HERITAGE BANK FBO
N H F FBO JORDAN FINN
FOUNDATION # 1226783
COLLATERAL ACCOUNT
11166 FAIRFAX BLVD
FAIRFAX VA  22030

000954

Account Number:  7944-8118

Dear Valued Client:

The information contained in the addressee portion of this letter reflects a recent change to the registration on the above account.

Please verify the new information for accuracy.  If it is correct, there is no action required.  However, if any portion is incorrect, please immediately notify us in writing at:

> Attn:  New Accounts Department
> LPL Financial
> 9785 Towne Centre Drive
> San Diego CA  92121

Please note that you may receive two separate notices regarding this change.  We are required to send change notifications to both the old and new account addresses.

Thank you for allowing us the opportunity to service your account.

Sincerely,

*Brad S. Fryer*

Brad Fryer
Executive Vice President
Broker/Dealer Service & Operations

Member FINRA/SIPC

EXHIBIT

E-12

ALL-STATE LEGAL®

# ASSIGNMENT OF LIFE INSURANCE POLICY AS COLLATERAL

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $6,500,000.00 | 12-27-2007 | 04-30-2008 | 9011003135 | 441 | | TP | |

References in the boxes above are for Assignee's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Grantor:** National Heritage Foundation, Inc.
6201 Leesburg Pike, Suite 405
Falls Church, VA 22044

**Lender:** Virginia Heritage Bank
Fairfax
11166 Fairfax Boulevard
Fairfax, VA 22030

A. **For Value Received** the undersigned hereby pledges, collaterally assigns, transfers, delivers and sets over to and in favor of Virginia Heritage Bank of Fairfax, 11166 Fairfax Boulevard, Fairfax, VA 22030, its successors and assigns, (herein called the "Assignee") Marketpower Bonus Index Annuity (EIA) EQ0001012408F in the current surrender amount of $919,134.39 in the ownership name of National Heritage Foundation, Inc., issued by EquiTrust Life Insurance Company (herein called the "Insurer") and any supplementary contracts issued in connection therewith (said policy and contracts herein called the "Policy"), upon the life of Steven Douglass, and all claims, options, privileges, rights, title and interest therein and thereunder (except as provided in Paragraph C hereof), subject to all the terms and conditions of the Policy and to all superior liens, if any, which the Insurer may have against the Policy. The undersigned by this instrument jointly and severally agree, and the Lender by the acceptance of this assignment agrees, to the conditions and provisions herein set forth.

B. It is expressly agreed that, without detracting from the generality of the foregoing, the following specific rights are included in this assignment and pass by virtue hereof:

1. The sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity;
2. The sole right to surrender the Policy and receive the surrender value thereof at any time provided by the terms of the Policy and at such other times as the Insurer may allow;
3. The sole right to obtain one or more loans or advances on the Policy at any time, either from the Insurer or from other persons, and to pledge or assign the Policy as security for such loans or advances;
4. The sole right to collect and receive all distributions or shares of surplus, dividend deposits or additions to the Policy, now or hereafter made or apportioned thereto, and to exercise any and all options contained in the Policy with respect thereto; provided that, unless and until the Assignee shall notify the Insurer in writing to the contrary, the distributions or shares of surplus, dividend deposits and additions shall continue on the plan in force at the time of this assignment; and
5. The sole right to exercise all nonforfeiture rights permitted by the terms of the Policy or allowed by the Insurer and to receive all benefits and advantages derived therefrom.

C. It is expressly agreed that the following specific rights, so long as the Policy has not been surrendered, are reserved and excluded from this assignment and do not pass by virtue hereof:

1. The right to collect from the Insurer any disability benefit payable in cash that does not reduce the amount of insurance;
2. The right to designate and change the beneficiary; and
3. The right to elect any optional mode of settlement permitted by the Policy or allowed by the Insurer;

however, the reservation of these rights shall in no way impair the right of the Assignee to surrender the Policy completely with all its incidents or impair any other right of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made subject to this assignment and to the rights of the Assignee hereunder.

D. This assignment is made and the Policy is to be held as collateral security for any and all present and future liabilities of the undersigned, or any of them, to the Assignee, of every nature and kind, whether now existing or that may hereafter arise in the ordinary course of business between any of the undersigned and the Assignee, together with interest, costs, expenses and attorneys' fees and other fees and charges (all of which liabilities secured or to become secured are herein individually, collectively and interchangeably called "Liabilities").

E. The Assignee covenants and agrees with the undersigned as follows:

1. That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons who would have been entitled thereto under the terms of the Policy had this assignment not been executed;
2. That the Assignee will not exercise either the right to surrender the Policy or (except for the purpose of paying premiums) the right to obtain policy loans from the Insurer, until there has been default in any of the Liabilities or a failure to pay any premium when due, nor until twenty days after the Assignee shall have mailed, by first-class mail, to the undersigned at the address last supplied in writing to the Assignee specifically referring to this agreement, notice of intention to exercise such right; and
3. That the Assignee will upon request forward the Policy without unreasonable delay to the Insurer for endorsement of any designation or change of beneficiary or any election of an optional mode of settlement.

F. The Insurer is hereby authorized to recognize the Assignee's claim to rights hereunder without investigating the reason for any action taken by the Assignee, or the validity or the amount of the Liabilities or the existence of any default therein, or the giving of any notice under Paragraph E(2) above or otherwise, or the application to be made by the Assignee of any amounts to be paid to the Assignee. The sole signature of the Assignee shall be sufficient for the exercise of any rights under the Policy assigned hereby and the sole receipt of the Assignee for any sums received shall be a full discharge and release therefor to the Insurer. Checks for all or any part of the sums payable under the Policy and assigned herein shall be drawn to the exclusive order of the Assignee if, when, and in such amounts, as may be requested by the Assignee.

G. The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the Policy whether or not obtained by the Assignee, or any other charges on the Policy, but any such amounts so paid by the Assignee from its own funds shall become a part of the Liabilities hereby secured, shall be due immediately, and shall bear interest at the lower of (a) the highest interest rate of any promissory note evidencing a liability from Borrower to Assignee or (b) the highest rate permitted by applicable law, from the date of each such advance until Assignee is repaid in full.

H. The exercise of any right, option, privilege, or power given herein to the Assignee shall be at the option of the Assignee, but (except as restricted by Paragraph E(2) above) the Assignee may exercise any such right, option, privilege, or power without notice to, or assent by, or affecting the liability of, or releasing any interest hereby assigned by, the undersigned, or any of them.

I. The Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities, may grant extensions, renewals or indulgences with respect to the Liabilities, or may apply to the Liabilities in such order as the Assignee shall determine, the proceeds of the Policy assigned or any amount received on account of the Policy by the exercise of any right permitted under this assignment, without resorting or regard to other security.

J. In the event of any conflict between the provisions of this assignment and provisions of the note or other evidence of any Liability, with respect to the Policy or rights of collateral security therein, the provisions of this assignment shall prevail.

K. Each of the undersigned declares that no proceedings in bankruptcy are pending against him or her and that his or her property is not subject to any assignment for the benefit of creditors.

GOVERNING LAW. This assignment will be governed by federal law applicable to Assignee and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This assignment has been accepted by Assignee in the Commonwealth of Virginia.

SIGNED THIS 27TH DAY OF DECEMBER, 2007.

THIS ASSIGNMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS ASSIGNMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**EXHIBIT**

E-13

ALL-STATE LEGAL®

ASSIGNMENT OF LIFE INSURANCE POLICY AS COLLATERAL

Loan No: 9011003135                                        (Continued)                                          Page 2

**INSURED OR OWNER:**

_____ [Seal]
Witness

_____

NATIONAL HERITAGE FOUNDATION, INC.

_____ (L.S.)
Janet H. Ridgely, Vice President of National Heritage Foundation, Inc.

6201 Leesburg Pike, Suite 405, Falls Church, VA  22044
Address

**BENEFICIARY:**

_____ [Seal]
Witness

_____

NATIONAL HERITAGE FOUNDATION, INC.

_____ (L.S.)
Authorized Signer for National Heritage Foundation, Inc.

6201 Leesburg Pike #405 Falls Church VA 22044
Address

_____ [Seal]
Witness

_____

_____ (L.S.)
Authorized Signer for National Heritage Foundation, Inc.

6201 Leesburg Pike #405 Falls Church VA 22044
Address

**LENDER:**

VIRGINIA HERITAGE BANK

By: _____ [Seal]
Authorized Signer

---

### ACKNOWLEDGMENT OF ASSIGNMENT BY INSURER

EquiTrust Life Insurance Company hereby acknowledges receipt of a duplicate of this Assignment of Life Insurance Policy Number EQ0001012408F, which has been filed at the home office of EquiTrust Life Insurance Company on this _____ Day of _____ 2008 .

EQUITRUST LIFE INSURANCE COMPANY

By: _____ [Seal]
Authorized Officer for EquiTrust Life Insurance Company

Asst Secretary

---

### RELEASE OF ASSIGNMENT OF LIFE INSURANCE POLICY

For Value Received, all right, title and interest of the undersigned assignee (Virginia Heritage Bank) in and to Life Insurance Policy Number EQ0001012408F issued by _____ on the life of Steven Douglass is hereby relinquished and released.

CORPORATE
SEAL

Attest: _____
                Signature and Title

Virginia Heritage Bank

By: _____
                Signature and Title

☐ **AMERICAN NATIONAL LiFE INSURANCE COMPANY OF TEXAS (ANTEX)**
☒ **AMERICAN NATIONAL INSURANCE COMPANY (ANICO)**

GALVESTON, TEXAS

## ABSOLUTE ASSIGNMENT OF POLICY

*Please forward original to the Home Office and retain a copy with the policy*

For and in consideration of ⎰ ☐ the sum of Ten and No/100 ($10.00) Dollars and other good and valuable considerations, the receipt of which is hereby acknowledged and confessed.

(Insert "X" or check one)

☐ the love and affection which the undersigned has and bears toward the hereinafter designated assignee, and as a present gift to such assignee,

the undersigned does hereby fully and forever, absolutely and irrevocable, (see-give), assign and transfer, set over and convey to*

**Virginia Heritage BAnk**

_____

_____ 11165 Fairfax Blvd #100 _____

hereinafter referred to as assignee, whose postoffice address is Fairfax, VA 22030 _____, all my right, title and interest in

and to Policy Number __LWS0040219_____, insured by AMERICAN NATIONAL, hereinafter referred to as "the company," upon the life

of ___Kent L. Walters_____, insured, together with all and every incident of ownership therein.

From and after execution and delivery of this assignment, all and every right and incident of ownership, control, management, use, enjoyment and disposition of, in and to or in respect to such policy of insurance shall absolutely and irrevocably pass to and remain vested in such assignee, and thereafter no such right or incident of any right or character shall remain in or ever revert to my estate. The incidents of ownership and control hereby assigned and conveyed include, but are not limited to, the right to surrender or cancel the policy, to assign the policy, to revoke and assignment, to pledge the policy for a loan, to obtain from the company a loan against the surrender value of the policy, to change the beneficiary, to receive dividends, if any, to agree with the company to any release, modification or amendment of the policy, and to exercise any and all rights of conversion as well as any and all other rights and options of every kind and character provided in the policy, all without the joinder or consent of the undersigned.

The company is hereby authorized and directed to pay the assignee any sum or sums that may become payable under said policy, thereby releasing American National of and from all responsibility with reference to the application thereof and of and from all other and further rights liability by reason of the payment so made.

The undersigned does also for my heirs, legal representatives, successors or assigns, guarantee the validity and sufficiency of the foregoing assignment to the above named assignee, his heirs, legal representatives, successors or assigns; and the assignee's title to said policy will forever warrant and defend.

It is agreed that the company does not assume any responsibility for the validity or legal effect of this assignment.

Wherever the singular of the terms "undersigned," "assignee" and "beneficiary" is used in this instrument, it shall include the plural, if applicable.

Dated and signed at __Falls Church_____ __VA____, this _____ day of __December___ __2008___
                              City                    State

Witnesses                              Addresses                              Signature of Owner

11166 FAIRFAX BLVD. SuiTE100
FAIRFAX, VA 22030                      C O O

_____                 _____                Officer's Title if Corporation is Owner

_____                 _____                Signature of Officer

### EXECUTE IN DUPLICATE

*If assigning to a partnership, print full names of every member of the firm and add "partners doing business under the firm name of (full name of firm)."

If assigning to a corporation, print corporate name in full and add "a corporation," and show title of person signing.

Attach original to the policy and forward the duplicate to the Home Office of the Company.

If the policy is owned by a corporation, attach certified copy of resolution of board of directors. Resolution must include name and title of office authorized to assign policy.

### BE SURE TO READ THIS FORM BEFORE SIGNING

Form 325                    |||||||||||||||||||||                 ev. 7/99



EXHIBIT

E-14

☐ AMERICAN NATIONAL LIFE INSURANCE COMPANY OF TEXAS (ANTEX)

☒ **AMERICAN NATIONAL INSURANCE COMPANY (ANICO)**

GALVESTON, TEXAS

## ABSOLUTE ASSIGNMENT OF POLICY

*Please forward original to the Home Office and retain a copy with the policy*

For and in consideration of {

☐ the sum of Ten and No/100 ($10.00) Dollars and other good and valuable considerations, the receipt of which is hereby acknowledged and confessed.

(Insert "X" or check one)

☐ the love and affection which the undersigned has and bears toward the hereinafter designated assignee, and as a present gift to such assignee,

the undersigned does hereby fully and forever, absolutely and irrevocable, (see-give), assign and transfer, set over and convey to*   **Virginia Heritage Bank**

hereinafter referred to as assignee, whose postoffice address is ~~11166 Fairfax Blvd #100~~ Fairfax, VA 22030 , all my right, title and interest in and to Policy Number  LWS0041966 , insured by AMERICAN NATIONAL, hereinafter referred to as "the company," upon the life of  Constance L. Sexton , insured, together with all and every incident of ownership therein.

From and after execution and delivery of this assignment, all and every right and incident of ownership, control, management, use, enjoyment and disposition of, in and to or in respect to such policy of insurance shall absolutely and irrevocably pass to and remain vested in such assignee, and thereafter no such right or incident of any right or character shall remain in or ever revert to my estate. The incidents of ownership and control hereby assigned and conveyed include, but are not limited to, the right to surrender or cancel the policy, to assign the policy, to revoke and assignment, to pledge the policy for a loan, to obtain from the company a loan against the surrender value of the policy, to change the beneficiary, to receive dividends, if any, to agree with the company to any release, modification or amendment of the policy, and to exercise any and all rights of conversion as well as any and all other rights and options of every kind and character provided in the policy, all without the joinder or consent of the undersigned.

The company is hereby authorized and directed to pay the assignee any sum or sums that may become payable under said policy, thereby releasing American National of and from all responsibility with reference to the application thereof and of and from all other and further rights liability by reason of the payment so made.

The undersigned does also for my heirs, legal representatives, successors or assigns, guarantee the validity and sufficiency of the foregoing assignment to the above named assignee, his heirs, legal representatives, successors or assigns; and the assignee's title to said policy will forever warrant and defend.

It is agreed that the company does not assume any responsibility for the validity or legal effect of this assignment.

Wherever the singular of the terms "undersigned," "assignee" and "beneficiary" is used in this instrument, it shall include the plural, if applicable.

Dated and signed at  Falls Church , VA , this _____ day of December 2008
                              City                        State

Witnesses                        Addresses
_Thomas A. Power_                11166 FAIRFAX BLVD., SUITE 100
                                 FAIRFAX, VA 22030                    } _____
                                                                         Signature of Owner

                                                                      C O O
                                                                      Officer's Title if Corporation is Owner

                                                                      } _____
                                                                         Signature of Officer

### EXECUTE IN DUPLICATE

*If assigning to a partnership, print full names of every member of the firm and add "partners doing business under the firm name of (full name of firm)."

If assigning to a corporation, print corporate name in full and add "a corporation," and show title of person signing.

Attach original to the policy and forward the duplicate to the Home Office of the Company.

If the policy is owned by a corporation, attach certified copy of resolution of board of directors. Resolution must include name and title of office authorized to assign policy.

### BE SURE TO READ THIS FORM BEFORE SIGNING

Form 325                                                                      Rev. 7/99



EXHIBIT

E-15